IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------x
:
RICHARD BEYER ET AL.                    :        3:13 CV 1576 (JBA)
:
v.                                      :
:
ANCHOR INSULATION CO., INC. ET AL.      :        DATE: APRIL 26, 2016
:
---------------------------------------------------------x

RULING ON DEFENDANTS' MOTIONS FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

In late September 2013, plaintiffs commenced this product liability lawsuit in the Connecticut Superior Court, which was removed to this court on October 28, 2013. (Dkt. #1). Plaintiffs' Second Amended Complaint, filed March 14, 2014, alleges numerous counts against defendants Anchor Insulation Co., Inc. ["defendant Anchor"], Johns Manville, Inc. ["defendant Manville"], and Icynene Corporation ["defendant Icynene"], regarding the installation in October 2010 of spray polyurethane foam ["SPF"] at plaintiffs' home in Niantic, Connecticut; plaintiffs allege that the SPF emitted noxious and harmful fumes, gases and odors, resulting in serious harm to them. (Dkt. #44; see also Dkt. #28). On October 28, 2014, U.S. District Judge Janet Bond Arterton filed her Ruling on Motions to Dismiss (Dkt. #67), which dismissed counts alleging CUTPA violations against all three defendants.

On February 3, 2016, Judge Arterton referred this file to this Magistrate Judge for all discovery matters. (Dkt. #110). Five days later, this Magistrate Judge filed her lengthy Endorsement Order (Dkt. #111)["February 2016 Discovery Ruling"], which denied as moot and without prejudice to renew plaintiffs' Motion for Protective Order (Dkt. #101); plaintiffs' motion concerned "limited surveillance" of less than twelve hours taken by an agent of defendant Manville prior to the inspection of plaintiffs' home on October 22, 2015. Under the latest scheduling order, all discovery will be completed by August 15, 2016 and all

dispositive motions will be filed on or before September 15, 2016.  (Dkts. ##121-22 & 4/12/16 electronic entry).

On February 19, 2016, defendants Manville and Icynene filed their Joint Motion for Sanctions for Spoliation of Evidence, with brief and affidavit in support (Dkts. ##112-14);[1] ten days later, defendant Anchor filed its own Motion for Sanctions for Spoliation of Evidence (Dkt. #115), joining the prior motion.  On March 11, 2016, plaintiffs filed their brief in opposition (Dkt. #116),[2] as to which defendants Manville and Icynene filed their reply brief fourteen days later.  (Dkt. #118).[3]  On April 7, 2016, Judge Arterton referred these motions

---

[1]The following six exhibits were attached: copy of Plaintiff Richard Beyer's Responses to Defendant Johns Manville['s] First Set of Request[s] for Admissions, dated December 28, 2015 (Exh. A); copy of Plaintiff Monica Beyer's Responses to Defendant Johns Manville['s] First Set of Request[s] for Admissions, also dated December 28, 2015 (Exh. B); excerpts from the deposition of plaintiff Richard Beyer, taken on August 18 and July 6, 2015 (Exh. C); copy of Home Air Check for plaintiffs' home, dated May 14, 2014 (Exh. D);  excerpts from the deposition of plaintiff Monica Beyer, taken on October 6, 2015 (Exh. E); and excerpts from Chemical Emissions of Residential Materials and Products: Review of Available Information (Exh. F).

[2]The following eighteen exhibits were attached: List of Attendees on October 22, 2015 at the inspection of plaintiffs' home (Exh. 1); copy of correspondence between counsel regarding the inspection, dated October 16, 2015 (Exh. 2); excerpts from the deposition of plaintiff Richard Beyer, taken on July 6,  August 17, and August 18, 2015 (Exh. 3); copies of emails between the parties, dated November 18 and 19, 2010 (Exh. 4); excerpts from the deposition of Raymond Lapierre, Jr., taken on October 9, 2015 (Exh. 5); excerpts from the deposition of Tyler J. Fiske, taken on July 15, 2015 (Exh. 6); promotional materials of defendant Icynene (Exhs. 7-8); copies of correspondence between plaintiffs and defendant Anchor, dated August 9, 2011 (Exh. 9); copy of emails, dated March 2 and May 31, 2012 (Exh. 10); copies of emails between plaintiffs and defendant Icynene, dated January 5, 8, 14 and 22, 2013 (Exh. 11); copies of emails between plaintiffs and defendant Manville, dated August 11, 18 and 19, 2011 (Exh. 12); copies of emails between plaintiffs and defendant Manville, dated August 10, 2011 (Exh. 13); affidavit of plaintiff Richard Beyer, dated March 2016 (Exh. 14)["Beyer Aff't"]; copies of letters from Mystic Air Quality Consultants, Inc., dated October 3 and 7, and November 16, 2011 (Exh. 15); photographs of the insulation (Exh. 16); copy of letter from defendant Manville to plaintiffs, dated September 19, 2011, and copy of email from defendant Manville to plaintiffs, dated October 28, 2011 (Exh. 17); and copies of emails between counsel, dated February 17, 2016 (Exh. 18).

One week later, plaintiffs also filed a Motion for Hearing.  (Dkt. #117).

[3]The following ten exhibits were attached: excerpts from Monica Beyer's deposition (Exh. A); another copy of the Home Air Check, dated May 14, 2014 (Exh. B); copy of Home Air Check, dated June 18, 2014 (Exh. C); copy of excerpts from www.greenspirationhome.com, dated July 13, 2013, with plaintiff Richard Beyer's comment, dated August 4, 2013 (Exh. D); copy of excerpts

to this Magistrate Judge.  (Dkt. #120).

For the reasons stated below, defendants' Motions for Sanctions for Spoliation of Evidence (Dkts. ##112 & 115) are granted in part.

## I.  DISCUSSION

As stated in defendants' brief, plaintiffs have alleged that they have been injured by volatile organic compounds ["VOCs"] that have been emitted, or "off-gassed," by defendants' SPF insulation; plaintiffs have taken air sampling tests which they claim show elevated levels of VOCs and have disclosed experts who opine that the allegedly elevated levels of VOCs are from defendants' SPF insulation; in contrast, defendants deny that there are high levels of VOCs in plaintiffs' home and further contend that any VOCs are not caused by defendants' products but rather by other items in plaintiffs' residence.  (Dkt. #113, Brief at 2, 4).  According to defendants, in anticipation of the home inspection on October 22, 2015, defendant Manville hired a licensed professional private investigator to observe plaintiffs' home on October 21, 2015 to see if plaintiffs attempted to remove any contents of the house.  (Id. at 4-5; see also Dkts. ##98, 100-04, 109-11).   Defendants point out that plaintiffs admit to the removal of some household items prior to the inspection, namely candles, carpeting, rugs and furniture, all of which emit VOCs, as well as to turning off the home's air filtration system and radon remediation system. (Dkt. #113, Brief at 2, 5-7; Exhs. A-B, ¶¶ 1, 19-25, 28-29, 47-61, 65-66; Exh. C, 8/18/15 Depo. at 649-50; Exh. D, at 4-5; Exh. E, at 102, 190-92, 300-01; Exh. F).  As a result, defendants argue that plaintiffs deliberately

---

from www.energyvanguard.com, dated January 2, 2014, with plaintiff Richard Beyer's comment, dated January 3, 2014 (Exh. E);o,py of Plaintiffs' Amended Damages Analysis, dated January 30, 2014  (Exh. F); excerpts from the deposition of Richard Beyer, taken on August 17, 2015 (Exh. G); affidavit of Deborah Curtis, sworn to on March 24, 2016 (Exh. H); compact disc (Exh. I); and copy of Defendant Icynene Corporation's First Set of Requests for Production Directed to Plaintiffs, dated April 10, 2015 (Exh. J).

"scrubbed their home of items which are well known to off-gas VOCs in advance of the home inspection[,]" and "purposeful[ly destroyed] critical evidence," thereby "unfairly prejudicing defendants in defending this matter." (Dkt #113, Brief at 2-3, 8). Thus, defendants seek the following seven sanctions: (1) precluding plaintiffs' reliance on air sampling, testing, monitoring, and related reports purporting to show elevated levels of VOCs in their home; (2) precluding plaintiffs from offering testimony regarding what they claim to be elevated levels of VOCs in their home; (3) precluding plaintiffs' experts from testifying or opining as to any allegedly elevated levels of VOCs in plaintiffs' home; (4) instructing the jury to presume that the items that were removed from the home would be favorable to defendants' defense and unfavorable to plaintiffs' claims; (5) instructing the jury to presume that the air quality inside plaintiffs' home does not pose a threat to human health or property; (6) awarding defendants their reasonable fees and expenses in uncovering plaintiffs' spoliation and their fees and expenses in litigating plaintiffs' spoliation; and (7) awarding defendants their reasonable fees and expenses in preparing for and conducting the home inspection and air sampling test. (Id. at 3, 8-28).

In response, plaintiffs assert that representatives from defendants Manville and Icynene personally inspected plaintiffs' home during the summer of 2011 when the SPF insulation was being removed and collected foam samples, but failed to retain their samples; defendant Anchor also retained Mystic Air Quality to perform air testing in October 2011. (Dkt. #116, at 5-6; Exh. 3, at 106-09, 149-52, 159-60, 196-201, 550-53, 555; Exhs. 13, 15, 17-18). Plaintiffs further contend that when they were advised of the scope of the inspection, scheduled for October 22, 2015, they had "no reasonable basis to believe" that the limited number of items removed from the home were considered to be "evidence" in this

case. (Dkt. #116, at 1-2, 6-8; Exh. 2; Beyer Aff't, ¶¶ 5-7). As to the specific items removed, plaintiffs represent that they removed items "of great sentimental value that belonged to their deceased daughter[,]" namely less than a dozen handmade beeswax candles made by her, and about twelve bins containing her artwork, school work, clothing and books; they "tidied up" the home by discarding three feather pillows, a broken cabinet door, and an old rug, they previously had rolled up a silk rug in December 2014 at the advice of health care professionals after plaintiff Monica Beyer had broken her femur; they put away two Yankee Candles in a cabinet near the kitchen; they had spent the night in a hotel the night before the home inspection and had taken with them personal hygiene items such as toothpaste, bar soap, shampoo, deodorant, and cosmetics; they took their laundry detergent with them to the hotel because they needed to clean their sons' football clothing after they had football practice; and they had turned off the air ventilation system because they had received instructions to do so when Mystic Air Quality did its air testing. (Dkt. #116, at 7-8, 10-15, 21; Beyer Aff't, ¶¶ 7-16). Thus, plaintiffs argue that they did not engage in spoliation of evidence, and none of the sanctions sought by defendants should be imposed. (Dkt. #116, at 8-25).

In their reply brief, defendants argue that plaintiffs were aware of their duty to preserve evidence, based upon the notice they had received regarding the inspection and the Home Air Check Indoor Air Quality Reports they had received in the past. (Dkt. #118, at 1-5; Exh. A, at 181-82, 190; Exhs. B-C). Defendants also clarified that the artwork, school work, clothing and books of plaintiffs' deceased daughter are not at issue, but rather the scented candles, carpeting, rugs, furniture, soaps, detergents, shampoo, conditioner, deodorant, toothpaste, and shaving cream. (Dkt. #118, at 9-10).

5

In his affidavit, plaintiff Richard Beyer mentions only two floor coverings, the first of which was "an old carpet that had been rolled up and placed in the attic[,]" which "came from the proposed master bath area that remains unfinished." (Beyer Aff't, ¶ 12). According to plaintiffs, this carpet was removed so that it would not be "a tripping hazard[]" during the inspection. (Id.). According to plaintiffs, the second floor covering was a silk rug, two feet by three feet, which was "rolled up in December 2014[,]" at the advice of medical professionals, prior to plaintiff Monica Beyer's release from Yale-New Haven Hospital for a broken femur. (Id., ¶ 13). However, the surveillance video taken on October 21, 2015, from 4:06 p.m. to 4:07 p.m., shows plaintiff Richard Beyer tossing into the back of a pickup truck <u>at least</u> ten separate rolled bundles of floor covering, some of which are relatively small, but others of which are quite large and bulky. (Dkt. #118, Exh. I; <u>see also id.</u>, Exh. H). Taken together, these bundles <u>far</u> exceed what would be expected from removal of carpeting from a bathroom, even one described as a "proposed master bath area." Thus, even assuming <u>arguendo</u> that plaintiffs' specific recollection of the items they removed that day was accurate, the affidavit grossly understates the quantity of floor covering that was removed from the home and placed into a pickup truck in less than one minute. As a result, the Court shares the concern of defendants with respect to plaintiffs' veracity in this matter, and therefore finds that with respect to the large-scale removal of floor covering on October 21, 2015, plaintiffs did engage in the spoliation of relevant evidence.

The critical issue then becomes what is the appropriate sanction here. As the Second Circuit explained in considerable detail seventeen years ago in <u>West v. Goodyear Tire & Rubber Co.</u>, 167 F.3d 776, 779 (2d Cir. 1999):

> Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or

> reasonably foreseeable litigation. It has long been the rule that spoliators should not benefit from their wrongdoing. . . .
>
> . . .
>
> Although a district court has broad discretion in crafting a proper sanction for spoliation, we have explained that the applicable sanction should be molded to serve the prophylactic, punitive and remedial rationales underlying the spoliation doctrine. The sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.

(internal quotations & multiple citations omitted). U.S. District Judge Janet Bond Arterton held, nearly seven years ago, in Innis Arden Gold Club v. Pitney Bowes, Inc., 257 F.R.D. 334, 341 (D. Conn. 2009):

> Factors to be considered [regarding spoliation] include the degree of fault of the party who altered or destroyed the evidence, the degree of prejudice suffered by the opposing party, and whether the appropriate sanction minimizes the prejudice to the opposing party and serves to deter such conduct by others in the future.
>
> In the Second Circuit, a party may be sanctioned for the destruction of evidence even in the absence of bad faith or intentional misconduct. Trial judges should have the leeway to tailor sanctions to insure that spoliators do not benefit from their wrongdoing–a remedial purpose that is best adjusted according to the facts and evidentiary posture of each case.

(internal quotations & multiple citations omitted).

As previously indicated, defendants seek seven forms of sanctions against plaintiff, some of which are duplicative. At a minimum, defendants are entitled to attorney's fees and costs for having to file this pending motion, brief in support, and reply brief, and the costs of the surveillance; however, defendants are not entitled to their reasonable fees and expenses in preparing for and conducting the home inspection and air sampling test, which they would have performed even without plaintiffs' actions.

Regarding defendants' request for adverse inferences, "[i]t is a well-established and long-standing principle of law that a party's intentional destruction of evidence relevant to the proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." Calpine Corp. v. AP&M Field Servs., Inc., No. 07 Civ. 9911 (GEL), 2008 WL 5159775, at *3 (S.D.N.Y. Dec. 9, 2008), quoting Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998). Thus, defendants are entitled to an adverse inference that the floor covering that was removed from the home would be favorable to defendants' defense and unfavorable to plaintiffs' claims. However, like Prezio Health, Inc. v. Schenk, 13 CV 1463 (WWE), 2016 WL 111406, at * 3 (D. Conn. January 11, 2016), given that discovery remains open until mid-August:

> [a]t this juncture, it is not possible to predict all the precise circumstances at which an adverse inference may be appropriate–such as specific issues arising in summary judgment motions or at trial. The exact parameters of an adverse inference are left to the sound discretion of Judge [Arterton] as such issues arise in the future.

Defendants are not, however, entitled to an adverse inference that instructs the jury to presume that the air quality inside plaintiffs' home does not pose a threat to human health or property.

As to defendants' remaining three requests – precluding plaintiffs' reliance on air sampling, testing, monitoring, and related reports purporting to show elevated levels of VOCs in their home; precluding plaintiffs from offering testimony regarding what they claim to be elevated levels of VOCs in their home; and precluding plaintiffs' experts from testifying or opining as to any allegedly elevated levels of VOCs in plaintiffs' home – this Magistrate Judge similarly leaves those remedies to the sound discretion of Judge Arterton for reconsideration

prior to determination of summary judgment motions or at trial, as in Prezio Health.[4]

## II. CONCLUSION

Accordingly, defendants' Motions for Sanctions for Spoliation of Evidence (Dkts. ##112 & 115) are granted in part to the extent set forth above, and without prejudice to renew in the future, and plaintiffs' Motion for Hearing (Dkt. #117) is denied.

This is not a Recommended Ruling, but a ruling on a non-dispositive motion, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen calendar days after service of same);** FED. R. CIV. P. 6(a) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated at New Haven, Connecticut, this 26th day of April, 2016.


/s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
U.S. Magistrate Judge

---

[4]As this Magistrate Judge noted in the February 2016 Discovery Ruling, "[t]his file is notable for the acrimony between counsel," and "[i]nsofar as discovery will continue for another four months, . . . , it is this Magistrate Judge's hope and expectation that counsel will conduct themselves in a more cooperative and professional fashion in the future."  (At 1, n.1 & 2, n.6).  If the behavior of counsel does not improve soon, this Magistrate Judge will not hesitate to appoint a Special Master to supervise discovery, the costs of whom will be borne by the parties.