IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------x
:
RICHARD BEYER ET AL.          :     3:13 CV 1576 (JBA)
:
v.                            :
:
ANCHOR INSULATION CO., INC. ET AL.  :  DATE: JULY 6, 2016
:
------------------------------------------------------x

RULING ON DEFENDANTS' JOINT MOTION TO STRIKE

In late September 2013, plaintiffs commenced this product liability lawsuit in the Connecticut Superior Court; it was removed to this court on October 28, 2013. (Dkt. #1). Plaintiffs' Second Amended Complaint, filed March 14, 2014, alleges numerous counts against defendants Anchor Insulation Co., Inc. ["defendant Anchor"], Johns Manville, Inc. ["defendant Manville"], and Icynene Corporation ["defendant Icynene"], regarding the installation in October 2010 of spray polyurethane foam ["SPF"] at plaintiffs' home in Niantic, Connecticut; plaintiffs allege that the SPF emitted noxious and harmful fumes, gases and odors, resulting in serious harm to them. (Dkt. #44; see also Dkt. #28). On October 28, 2014, U.S. District Judge Janet Bond Arterton filed her Ruling on Motions to Dismiss (Dkt. #67), which dismissed counts alleging CUTPA violations against all three defendants.

On February 3, 2016, Judge Arterton referred this file to this Magistrate Judge for all discovery matters. (Dkt. #110; see also Dkts. ##120, 127). Familiarity is presumed with the previous discovery rulings and orders issued by this Magistrate Judge. (See Dkts. ##111, 128). Under the latest scheduling order, all expert discovery is to be completed by August 15, 2016, and all dispositive motions are to be filed on or before September 15, 2016, and there will be no further extensions. (Dkts. ##121-22 & 4/12/16 electronic entry).

On April 14, 2016, defendants Manville, Anchor, and Icynene [collectively

"defendants"] filed their Joint Motion to Strike and brief in support, with respect to the expert report of Dr. Yuh-Chin Tony Huang, dated March 18, 2016. (Dkts. ##123-24, 143; see also Dkts. ##125-127, 142).[1]  On May 5, 2016, plaintiffs filed their brief in opposition (Dkt. #129),[2] as to which defendants filed their reply brief fourteen days later. (Dkt. #137).[3]

For the reasons stated below, defendants' Joint Motion to Strike (Dkt. #123) is granted.

I.  DISCUSSION

As stated in defendants' brief, plaintiffs have alleged that they have been injured by volatile organic compounds ["VOCs"] that have been emitted, or "off-gassed," by defendants' SPF insulation; in contrast, defendants contend that plaintiffs "are not and never have been injured in any way by the SPF insulation installed in the home and subsequently removed." (Dkt. #124, at 2).  According to defendants, on June 22, 2015, plaintiffs disclosed Dr. Yuh-

---

[1] The following five exhibits were attached, under seal: copy of Dr. Huang's report, dated June 22, 2015 ["Original Report"](Exh. A); copy of a report following an independent medical examination conducted by Dr. John Russomanno, dated December 9, 2015 (Exh. B); copies of reports by Dr. Huang after he examined plaintiffs on January 11, 2016 ["Additional Reports"](Exhs. C-D); and copies of case law (Exh. E).

Defendants filed a Motion to Seal their brief and exhibits in order to protect plaintiffs' personal and confidential medical information. (Dkt. #125; see also Dkt. #126). Such motion was granted on July 5, 2016.  (Dkt. #142).

[2] The following four exhibits were attached: excerpts from the deposition of plaintiff Richard Beyer, taken on July 6, 2015 (Exh. 1); excerpts from the deposition of plaintiff Monica Beyer, taken on October 6, 2015 (Exh. 2); excerpts from Plaintiffs' Objections and Responses to Defendant Johns Manville['s] First Set of Interrogatories (Exh. 3); and copies of case law (Exh. 4).

On May 19, 2016, plaintiffs also filed a supplemental affidavit of counsel in further support of their brief in opposition (Dkt. #136); attached is a copy of a letter between counsel, dated May 19, 2016. (Exh. 1).

[3] Attached to defendants' reply brief are copies of case law (Exh. A), and the affidavit of defense counsel, sworn to May 19, 2016 (Exh. B).

Chin Tony Huang as an expert and disclosed Dr. Huang's first report ["Original Report"]. (Id. at 3 & Exh. A).[4] However, Dr. Huang had not physically examined plaintiffs prior to preparing his Original Report. (Id. at 2-3). Defendants assert that after receiving this report, they requested that plaintiff Richard Beyer undergo an Independent Medical Examination ["IME"]; this IME was conducted on December 9, 2015, by Dr. John Russomanno, and a report summarizing his findings was prepared on January 28, 2016. (Id. at 3 & Exh. B). On January 11, 2016, plaintiffs were physically examined by Dr. Huang and on March 18, 2016, Dr. Huang issued two reports ["Additional Reports"]. (Id. & Exhs. C-D). Defendants contend that the Additional Reports "add new opinions and grounds therefor, none of which were present in the Original Report[,]" (id. at 4) and that they are not proper supplements pursuant to Rule 26(e)(1). (Id. at 7-14). Accordingly, defendants move to strike the Additional Reports. (Id. at 14).

In response, plaintiffs contend that the Additional Reports "are not an attempt to circumvent the disclosure deadlines, but rather, a presentation of newly discovered evidence . . . which [p]laintiffs were obligated to produce under Fed. R. Civ. P. 26(e)." (Dkt. #129, at 1). Plaintiffs claim that Dr. Huang was not able to conduct a physical examination prior to January 11, 2016, because Dr. Huang practices medicine in North Carolina and plaintiffs could not travel out of state with their entire family until that month. (Id. at 3, 6).[5] Plaintiffs

---

[4]Plaintiffs' expert disclosures were due on May 22, 2015, but on June 22, 2015, plaintiffs sought, and obtained, an extension until July 22, 2015. (See Dkts. ##71, 77, 80).

[5]Plaintiffs also claim that the delay of more than two months between the time of the examinations by Dr. Huang, on January 11, 2016, and the date of plaintiffs' production of the Additional Reports, on March 23, 2016, was due to a change of staff in Dr. Huang's office. (Id. at 3).

also claim that the Additional Reports "cannot be a surprise to [d]efendants because [p]laintiffs had previously disclosed their injuries in deposition[s] and through interrogatories[,]" (id. at 3)(emphasis omitted), and that defendants will not be prejudiced by the Additional Reports. (Id. at 6-9).

In their reply brief, defendants argue that the Additional Reports are not a proper Rule 26(e) supplement because plaintiffs' further medical examination does not constitute newly discovered evidence (Dkt. #137, at 2-5), that the Additional Reports are neither substantially justified nor harmless, and that they constitute an unfair surprise to defendants. (Id. at 6-7).

A. LEGAL STANDARD

Rule 26(a)(2)(B)(i) of the Federal Rules of Civil Procedure requires that a written expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them[.]" "It should be assumed that at the time an expert issues his report, that report reflects his full knowledge and complete opinions on the issues for which his opinion has been sought." Innis Arden Golf Club v. Pitney Bowes, Inc., No. 3:06 CV 1352 (JBA), 2009 WL 5873112, at *3 (D. Conn. Feb. 23, 2009), quoting Sandata Techs., Inc. v. Infocrossing, Inc., Nos. 05 Civ. 09546(LMM)(THK), 06 Civ. 01896(LMM)(THK), 2007 WL 4157163, at *4 (S.D.N.Y. Nov. 16, 2007)(citation omitted).

However, an expert witness has a duty to supplement his or her report "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. . . ." Id. at *2, quoting FED. R. CIV. P. 26(e)(1)(A), (2). Proper supplementation, however, does not simply

bolster a party's earlier submission; "rather, [it] arises 'only if the expert subsequently learns of information that was previously unknown or unavailable, that renders information previously provided in an initial report inaccurate or misleading because it was incomplete. . . .'" Id. at *3 (emphasis in original), quoting Sandata Techs., 2007 WL 4157163, at *4 (additional citations omitted).

Upon finding that the production of certain evidence did not comply with "Rule 26(a) or (e), the [non-compliant] party is not allowed to use that information . . . to supply evidence . . . at trial, unless the failure was substantially justified or is harmless . . . ." Id. at *2, quoting FED. R. CIV. P. 37(c)(1). "Rule 37(c)(1)'s preclusionary sanction is automatic absent a determination of either substantial justification or harmlessness." Id., quoting Lore v. City of Syracuse, No. 5:00-CV-1833, 2005 WL 3095506, at *3 (N.D.N.Y. Nov. 17, 2005).

### B. DISCUSSION

Plaintiffs claim that Dr. Huang's Additional Reports "were a necessary supplement to his [O]riginal [R]eport due to the fact that he was unable to examine [p]laintiffs prior to his [O]riginal [R]eport." (Dkt. #129, at 3). Plaintiffs explain that Dr. Huang was unable to examine them earlier because plaintiffs "reside . . . over 600 miles from Dr. Huang's office[,]" and "have two school age sons which further inhibited their ability to travel to Dr. Huang's offices." (Id. at 6).

After a careful review of the reports, the Court finds that the Additional Reports are not a proper supplementation. The Additional Reports appear to be an attempt to bolster an earlier submission rather than an attempt to correct inaccurate or misleading information in the Original Report. The Court is not swayed by plaintiffs' argument that the Additional Reports contain information that was previously unknown or unavailable. (See Dkt. #129,

5

at 5-6). As defendants point out, plaintiffs chose to use an out of state expert and had ample time after beginning the lawsuit on September 26, 2013, to arrange an examination prior to the expert disclosure deadline in mid-2015. (See Dkt. #137, at 4-5); see also Diaz v. Con-Way Truckload, Inc., 279 F.R.D. 412, 421 (S.D. Tex. 2012)(defendant's lack of diligence in seeking a Rule 35 examination does not "make the information obtained from such an examination 'unavailable' at the time [defendant] disclosed its expert reports."). Because plaintiffs chose not to arrange an examination in the nearly two years between filing the lawsuit and the issuance of the Original Report, the Court finds that this information was not unknown or unavailable, and thus the Additional Reports were not a proper supplementation under Rule 26. Accordingly, because plaintiffs failed to produce Dr. Huang's reports in accordance with Rule 26(a), plaintiffs are "not allowed to use . . . [the Additional Reports] unless [plaintiffs'] failure [to comply with Rule 26(a)] was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

When determining whether the discovery at issue is "substantially justified or is harmless," courts in the Second Circuit consider: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the . . . precluded [discovery]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [discovery]; and (4) the possibility of a continuance." Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 961 (2d Cir. 1997)(internal citations omitted), cert. denied, 523 U.S. 1020 (1998). These criteria, however, demonstrate that plaintiffs' belated production of their expert's reports was neither substantially justified nor harmless.

Plaintiffs lack adequate justification for failing to comply with their expert discovery deadline. As previously indicated, plaintiffs claim that they were unable to be examined by

their expert any earlier, and thus were unable to produce notes from his examination in a more timely fashion, because they reside "over 600 miles from Dr. Huang's office[,] . . . [and they] have two school aged sons," making it difficult for them to "accommodate the entire family's schedule to take a trip to North Carolina and be evaluated by Dr. Huang" until their children's holiday break. (Dkt. #129, at 6). Though the Court recognizes that it may have been inconvenient for plaintiffs to travel to see their chosen expert, inconvenience does not justify their failure to comply with the discovery schedule. As discussed above, plaintiffs had nearly two years between when they filed this lawsuit and when Dr. Huang issued his Original Report. If plaintiffs intended but were unable to arrange the requisite medical examination, it was incumbent upon them to seek the Court's leave for more time. "Yet rather than acknowledging [their] self-created predicament, [and] asking for additional time to complete the report," Sandata Techs., 2007 WL 4157163, at *6, plaintiffs continued to conduct expert discovery after their deadline without notice to the defendants or leave from the court.

Regarding the importance of the Additional Reports, plaintiffs rightly assert that because they discussed plaintiffs' symptoms and the possible causes thereof, Dr. Huang's reports "go[] directly to the central issue in this case." (Dkt. #129, at 7). However, granting defendants' Motion to Strike will not result in the preclusion of all of Dr. Huang's testimony; he will simply be limited to the conclusions and reasons he expressed in his Original Report.

The Court also must consider whether plaintiffs' late submission of the Additional Reports was harmless to defendants. Plaintiffs argue that there will be no injury to defendants because "[n]othing new has been disclosed" in the Additional Reports, and because many of the plaintiffs' symptoms discussed in the Additional Reports had already

been asserted in depositions and interrogatories. (Dkt. #129, at 7). However, as defendants correctly argue, even if defendants had already been informed of all of the symptoms that plaintiffs allege, the fact that plaintiffs claim to experience each symptom is clearly not the same as expert testimony as to the presence and significance of those symptoms. (Dkt. #129, at 3-4).

Because Rule 26(a)(2) requires that a written expert report contains "a <u>complete</u> statement of all opinions the witness will express and the basis and reasons for them[,]" FED. R. CIV. P.26(a)(2)(B)(i)(emphasis added), discovery proceeded under the assumption that Dr. Huang's expert testimony would reflect the content of the Original Report. Although defendants have not yet deposed Dr. Huang, defendants appropriately relied on the Original Report when selecting an expert to perform an IME of Richard Beyer and when determining the scope of the IME.  Defendants were entitled to conduct an IME that tested all the relevant opinions of Dr. Huang, not just some, and the late production of the Additional Reports prevented defendants from doing so. (Dkt. #137, at 7). "The purpose of Rule 26(a)(2) is to prevent unfair surprise at trial and to permit the opposing party to prepare rebuttal reports, to depose the expert in advance of trial, and to prepare for depositions and cross-examination at trial." Minebea Co., Ltd. v. Papst, 231 F.R.D. 3, 5 (D.D.C. 2005). To permit plaintiffs to treat the expert discovery deadlines as suggestion impairs the defendants ability to conduct their own discovery, which results in additional expense, and further delay. <u>Id</u>. at *6.

The final criteria to be considered when deciding whether to preclude the Additional Reports is the possibility of a continuance. In the instant case, there have already been numerous extensions to the discovery schedule, and the "expeditious management of

8

discovery schedules is especially important in cases of this nature because they require extensive expert involvement over lengthy periods of time." Softel, 118 F.3d at 962. Accordingly, repeated delay is more burdensome in some cases than in others. "When trial courts permit deadline slippage of this sort, trials cannot be scheduled when they ought to be, resulting in the backup of other cases and eventual scheduling chaos as a series of bottlenecks builds." Id. at 962-63. In the instant case especially, when the Court has given numerous extensions of time for discovery, Judge Arterton has indicated that "[n]o further extensions will be granted[,]" (Dkt. #122), and plaintiffs already proceeded with discovery beyond the court-ordered deadlines, a continuance is not only burdensome but unwarranted.

As the parties well know, the purpose of the discovery Rules is to achieve disclosure of all the evidence relevant to the merits of a controversy. "It is intended that this disclosure of evidence proceed at the initiative of the parties, free from the time-consuming and costly process of court intervention. When a party seeks to frustrate this design by disobeying discovery orders, . . . severe sanctions are appropriate." Daval Steel Prds. v. M/V Fakredine, 951 F.2d 1357, 1365 (2d Cir. 1991)(citations omitted). While preclusion is a "drastic remedy," (Dkt. #129, at 5) plaintiffs' untimely additional production is neither substantially justified nor harmless. Given that the Original Report was all that plaintiffs submitted before their discovery deadline, plaintiffs are limited to reliance upon their expert's testimony as provided in the Original Report. Thus, plaintiffs are precluded from relying on the Additional Reports, and Dr. Huang's opinions are limited to those provided in the Original Report.

## II. CONCLUSION

Accordingly, defendants' Motion to Strike (Dkt. #123) is granted.

This is not a Recommended Ruling, but a ruling on a non-dispositive motion, the

standard of review of which is specified in 28 U.S.C. § 636; Fed. R. Civ. P. 6(a) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen calendar days after service of same);** Fed. R. Civ. P. 6(a) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated at New Haven, Connecticut, this 6th day of July, 2016.

/s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
U.S. Magistrate Judge