IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------x
                                         :
RICHARD BEYER ET AL.                     :          3:13 CV 1576 (JBA)
                                         :
v.                                       :
                                         :
ANCHOR INSULATION CO., INC. ET AL.       :          DATE: SEPTEMBER 8, 2016
                                         :
-------------------------------------------------x
```

RULING ON DEFENDANTS' MOTION TO STRIKE

In late September 2013, plaintiffs commenced this product liability lawsuit in the Connecticut Superior Court; it was removed to this court on October 28, 2013.  (Dkt. #1). Plaintiffs' Second Amended Complaint, filed March 14, 2014, alleges numerous counts against defendants Anchor Insulation Co., Inc. ["defendant Anchor"], Johns Manville, Inc. ["defendant Manville"], and Icynene Corporation ["defendant Icynene"], regarding the installation in October 2010 of spray polyurethane foam ["SPF"] at plaintiffs' home in Niantic, Connecticut; plaintiffs allege that the SPF emitted noxious and harmful fumes, gases and odors, resulting in serious harm to them.  (Dkt. #44; see also Dkt. #28).  On October 28, 2014, U.S. District Judge Janet Bond Arterton filed her Ruling on Motions to Dismiss (Dkt. #67), which dismissed counts alleging CUTPA violations against all three defendants.

On February 3, 2016, Judge Arterton referred this file to this Magistrate Judge for all discovery matters; familiarity is presumed with the multiple prior discovery rulings.  (Dkt. #110; see also Dkts. ##111, 120, 127, 128, 144, 154, 160, 165, 175, 178, 180).  Under the latest scheduling orders, all discovery was to be completed by August 15, 2016, and all summary judgment and Daubert motions are to be filed on or before September 15, 2016. (4/12/16 Electronic Order; Dkt. #182).

On  June  23,  2016,  defendants  Manville,  Anchor,  and  Icynene  [collectively

"defendants"] filed their Joint Motion to Strike the May 20 and 26, 2016[1] expert reports and testing of Gary Cude, with a brief in support. (Dkts. ##140-41).[2]  On July 14, 2016, plaintiffs filed their brief in opposition (Dkt. #145),[3] to which defendants filed their reply brief fourteen days later. (Dkt. #152).[4]  On August 4, 2016, this Magistrate Judge ordered plaintiff to provide Chambers with a copy of the relevant reports.  (Dkt. #157).  Such report was received on August 8, 2016 and has been filed under seal.  (Dkt. #183).

For the reasons stated below, defendants' Joint Motion to Strike (Dkt. #140) is granted.

## I.  DISCUSSION

As stated in defendants' brief, plaintiffs have alleged that they have been injured by

---

[1]Defendants' brief is inconsistent about the year of the production they are challenging. According to the relevant facts described in defendants' brief, "on May 20, 2015, the Friday before . . . Cude's scheduled deposition, [p]laintiffs' counsel produced new and unidentified raw data and uninterpreted testing results," (Dkt. #141, at 5) and "on May 26, 2015, the morning of . . . Cude's deposition, [p]laintiffs produced new reports and expert opinions . . . ." (Id.)(emphasis added). However, footnote 5 provides that "New Reports" refers to documents produced by plaintiffs on two dates in May 2016, which appears to be when Cude's deposition was taken. (Id., at n. 5).

[2]The following six exhibits were attached: copy of Cude's June 22, 2015, report ["Original Report"](Exh. A); copy of subpoena to produce documents, information, or objects or to permit inspection of premises in a civil action to Matrix Analytical Labs for November 20, 2015  (Exh. B); Notice of Deposition of Gary Cude for February 19, 2016, dated February 2, 2016, and Renotice of Deposition for same on May 26-27, 2016, dated April 20, 2016 (Exh. C); copies of case law (Exh. D); affidavit of Mason Knowles, sworn to June 13, 2016 (Exh. E); and affidavit of Catherine Mohan, sworn to June 23, 2016 (Exh. F).

[3]The following eight exhibits were attached: excerpts from the deposition of plaintiff Richard Beyer, taken on July 6, 2015 (Exh. 1); correspondence from defendant Icynene's counsel to plaintiffs' counsel reflecting notice of entry onto plaintiffs' land for inspection (Exh. 2); affidavit of Dawn M. Smith, sworn to July 14, 2016 (Exh. 3); another copy of the Knowles affidavit (Exh. 4); affidavit of Gary Cude, sworn to July 14, 2016 (Exh. 5); excerpts from the deposition of Gary Cude, taken on May 26, 2016 (Exh. 6); excerpts from the deposition of Raymond Lapierre, Jr., taken on October 9, 2015 (Exh. 7); and excerpts from the deposition of Tyler Fiske, taken on July 15, 2015 (Exh. 8).

[4]Attached to defendants' reply are the affidavit of Catherine Mohan, sworn to July 28, 2016 (Exh. A); correspondence to plaintiffs' counsel from Matrix Analytical Laboratories, dated May 18, 2016 (Exh. B); and copy of report of Mason Knowles, dated July 12, 2016.

volatile organic compounds ["VOCs"] that have been emitted, or "off-gassed," by defendants' SPF insulation; in contrast, defendants contend that plaintiffs "are not and never have been injured in any way by the SPF insulation installed in [their] home and subsequently removed." (Dkt. #141, at 3).  According to defendants, when plaintiffs' expert disclosures were due on June 22, 2015, plaintiffs disclosed Cude as an expert and produced his first report ["Original Report"], which offered opinions regarding the installation of the SPF in plaintiffs' home and referenced air-quality testing performed by his company, Matrix Analytical Laboratories ["Matrix"].  (Id. & Exh. A).  The report, however, did not mention an intent to perform any future air sampling, or reference off-gassing tests to be performed, either by himself or by a third party.  (Id. at 4 & Exh. A).  Cude received a subpoena on October 20, 2015, which directed Matrix to produce all testing and/or sampling results and reports relating to plaintiffs' home by November 20, 2015.  (Id. at 4 & Exh. B).  Defendants allege that in mid-January, Matrix partially complied with the subpoena, but included no documents relating to off-gassing tests or air sampling tests performed after the expert disclosure deadline.  (Id.).  Defendants noticed Cude's deposition for February 19, 2016, and then subsequently rescheduled it for May 26 and 27, 2016.  (Id. & Exh. C).  According to defendants, on May 20, 2016, plaintiffs' counsel produced new raw data and uninterpreted testing results, including results of testing performed after the deadline for plaintiffs' expert disclosure.  (Id. at 5).  Defendants further allege that on May 26, 2016, plaintiffs produced new reports and expert opinions [collectively, with the May 20, 2016 production, "Additional Reports"] that described sampling and testing of SPF insulation and air samples, and the analytical methods performed on those samples, taken by Cude after the deadline for disclosure of plaintiffs' expert reports.  (Id.).

Defendants contend that the Additional Reports "are not designed to correct any

errors in the original report issued by . . . Cude on June 22, 2015, . . . nor are they based on any newly discovered information which was unavailable to the [p]laintiffs when the Original Report was produced[,]" and that they are "attempt[s] to cure deficiencies in the Original Report[.]" (Id. at 2).  Accordingly, defendants move to strike the Additional Reports and request the Court award costs and fees to defendants for bringing this motion.  (Id. at 15).

In response, plaintiffs assert that the Additional Reports are "not an attempt to circumvent the disclosure deadlines but, rather, a proper supplement made [in] accordance with Fed. R. Civ. P. 26(e) in an attempt to show the current conditions in the home as of the time [d]efendants' experts tested [it]."  (Dkt. #145, at 1).  Plaintiffs claim that Cude took samples of defendants' products and of the indoor air quality in plaintiffs' home at the same time that defendants took such samples for inspection, and that any testing on such sampling by plaintiffs was done so the parties had samples taken under identical testing conditions.  (Id. at 4).  Plaintiffs describe this as "new evidence [that] has come to light since the date of [p]laintiffs' expert designation deadline[,]" (id.) and that Cude's Original Report was an incomplete initial disclosure which required supplementation.  (Id. at 5).  Plaintiffs further argue that Cude's Additional Reports were harmless to defendants and go to the central issue of the case.  (Id. at 7-11).

In their reply brief, defendants argue that the Additional Reports are not a proper Rule 26(e) supplement because Cude's tests performed on existing spray foam insulation and air samples from plaintiffs' home do not constitute newly discovered evidence (Dkt. #152, at 3), that any incompleteness in the Original Report was caused by plaintiffs (id. at 3-4), and that the Additional Reports are neither substantially justified nor harmless. (Id. at 4-7).

4

A. LEGAL STANDARD

Rule 26(a)(2)(B)(i) of the Federal Rules of Civil Procedure requires that a written expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them[.]" "It should be assumed that at the time an expert issues his report, that report reflects his full knowledge and complete opinions on the issues for which his opinion has been sought." Innis Arden Golf Club v. Pitney Bowes, Inc., No. 3:06 CV 1352(JBA), 2009 WL 5873112, at *3 (D. Conn. Feb. 23, 2009), quoting Sandata Techs., Inc. v. Infocrossing, Inc., Nos. 05 Civ. 09546(LMM)(THK), 06 Civ. 01896(LMM)(THK), 2007 WL 4157163, at *4 (S.D.N.Y. Nov. 16, 2007)(citation omitted)).

However, an expert witness has a duty to supplement his or her report "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. . . ." Id. at *2, quoting FED. R. CIV. P. 26(e)(1)(A), (2).  Proper supplementation, however, does not simply bolster a party's earlier submission; "rather, [it] arises 'only if the expert subsequently learns of information that was previously unknown or unavailable, that renders information previously provided in an initial report inaccurate or misleading because it was incomplete. . . .'" Id. at *3, quoting Sandata Techs., 2007 WL 4157163, at *4 (additional citations omitted).

Upon finding that the production of certain evidence did not comply with "Rule 26(a) or (e), the [non-compliant] party is not allowed to use that information . . . to supply evidence . . . at trial, unless the failure was substantially justified or is harmless . . . ." Id. at *2, quoting FED. R. CIV. P. 37(c)(1). "Rule 37(c)(1)'s preclusionary sanction is automatic absent a determination of either substantial justification or harmlessness." Id., quoting Lore

v. City of Syracuse, No. 5:00-CV-1833, 2005 WL 3095506, at *3 (N.D.N.Y. Nov. 17, 2005).

    B. ANALYSIS

    Plaintiffs claim that Cude's Additional Reports were proper supplements consistent with Rule 26(e) because they "show the current conditions in the home as of the time [d]efendants' experts tested [it]," and allowed the parties to "obtain data taken under identical testing conditions[.]" (Dkt. #145, at 1, 4). Plaintiffs explain that the testing was performed "solely for the purpose of doing an analysis under identical conditions as those analyzed by the [d]efendants . . . ." (Id. at 6). Defendants, however, argue that "as [p]laintiffs' expert, . . . Cude could have taken air or foam samples from the [p]laintiffs' home and tested them at any time prior to the June 22, 2015 expert disclosure deadline." (Dkt. #152, at 4).

    After a careful review of the reports, which are almost entirely testing results and raw data presented in tables and graphs,[5] the Court finds that the Additional Reports are not proper supplementation. Plaintiffs have identified no special need for the parties to collect samples simultaneously, and Cude, as plaintiffs' own expert, could have collected samples from plaintiffs' home at any time prior to plaintiffs' expert disclosure deadline. Plaintiffs' delay in testing did not render the resulting information "unavailable" prior to the expert disclosure deadline. Diaz v. Con-Way Truckload, Inc., 279 F.R.D. 412, 421 (S.D. Tex. 2012)(a plaintiff's lack of diligence in seeking an examination does not "make the information obtained from such an examination 'unavailable' at the time [the party] disclosed its expert reports[]"). Because plaintiffs failed to make arrangements for such testing in the nearly two years

---

[5]The remainder of the production includes six pages of photographs of plaintiffs' home, several pages of instructions for collecting a VOC sample, summary reports, and other miscellaneous matters. The raw data covers pps.  8-80, 211-17, 220-29, 232-44, 247-54, 257-63, 266-73, 276-84, 287-95, 298-304, and 307-25.  Pages 90-97, 152-96, and 198-208 were missing.

between filing the lawsuit and their expert disclosure deadline, the Court finds that this information was not unknown or unavailable, and thus is not a proper supplementation under Rule 26(e). Due to plaintiffs' failure to comply with Rule 26(a), they may not use the Additional Reports "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

When determining whether such testimony is "substantially justified or is harmless," courts in the Second Circuit consider: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 961 (2d Cir. 1997)(internal citations omitted), cert. denied, 523 U.S. 1020 (1998). These criteria, however, demonstrate that plaintiffs' belated production of Cude's Additional Reports was neither substantially justified nor harmless.

Plaintiffs lack adequate justification for failing to comply with their expert discovery deadline. The only justification plaintiffs provide is that they wanted to do "an analysis under identical conditions as those analyzed by the [d]efendants." (Dkt. #145, at 6). But their desire to take samples of plaintiffs' home at the same time as defendants did not preclude them from complying with their expert discovery deadline: plaintiffs could have collected samples on more than one occasion, or could have attempted to arrange for both parties to simultaneously collect samples before plaintiffs' deadline. Regardless, if plaintiffs felt they would have to conduct sampling and testing after their expert discovery deadline, they should have brought the issue to the Court's attention and sought leave to do so. Instead, plaintiffs continued to conduct discovery at will. As plaintiffs have been reminded already, they may not continue to conduct expert discovery after their deadline without notice to the

defendants or leave from the Court.

Addressing the importance of the Additional Reports, plaintiffs claim that "the [n]ew [t]esting [d]ata goes directly to the central issue in this case." (Dkt. #145, at 7). Yet such an evaluation of the data's importance, if genuine, should have compelled plaintiffs to prepare it in accordance with the Court's scheduling order. Further, granting defendants' Motion to Strike will not result in the preclusion of all of Cude's testimony, but will limit him to the conclusions, and the bases for those conclusions, that he expressed in the Original Report.

The Court must also consider whether plaintiffs' late submission of the Additional Reports prejudiced defendants. Plaintiffs argue that defendants had the raw data from the Additional Reports "almost a full week prior to the scheduled deposition" of Cude. (Dkt. # 145, at 8). Providing defendants with "almost a week" to prepare is insufficient to cure the prejudice of entirely new expert reports produced shortly before that expert's deposition. As defendants point out, they had "a mere two business days prior to . . . Cude's deposition to review his extensive and then-unexplained raw data." (Dkt. #152, at 5). Worse, plaintiffs produced additional information the day of Cude's deposition, right before it began. (Id. at 5-6). Plaintiffs denied defendants the opportunity to depose Cude with a full review of his reports and opinions. As defendants observe, the Additional Reports also include additional testing by plaintiffs that defendant had not undertaken.  (Dkt. #141, at 13). This further prejudiced defendants by confronting them, within a week of a deposition, with testing they had no reason to anticipate, and could not replicate. (Id.)

The final criterion to be considered in deciding whether to preclude the Additional Reports is the possibility of a continuance. As noted in this Magistrate Judge's Ruling on Defendants' Joint Motion to Strike, filed July 6, 2016 (Dkt. #144), at 8-9, approved over

objection on August 29, 2016 (Dkt. #178), regarding a similar motion in the instant case, there have already been numerous extensions in the discovery schedule, and the parties still struggle to comply with discovery deadlines. Accordingly, a continuance is both burdensome and unwarranted.

Defendants rightly assert that this is not the first time they have had to ask the Court to spend time policing plaintiffs' compliance with its scheduling orders. (Dkt. #141, at 15). The intent of the rules governing discovery is that it proceed at the initiative of the parties, without requiring time-consuming and costly court intervention. Daval Steel Prds. v. M/V Fakredine, 951 F.2d 1357, 1365 (2d Cir. 1991)(citations omitted). When parties frustrate this intent, additional sanctions are appropriate. Id. Accordingly, pursuant to its discretionary power under Rule 37(c)(1), the Court awards defendants the reasonable attorneys fees and costs incurred in the filing of this motion, the amount of which shall be determined at the conclusion of this litigation.

## II. CONCLUSION

Accordingly, defendants' Motion to Strike (Dkt. #140) is granted.

This is not a Recommended Ruling, but a ruling on a non-dispositive motion, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen calendar days after service of same);** FED. R. CIV. P. 6(a) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure**

**to file timely objection to Magistrate Judge's recommended ruling may preclude**

**further appeal to Second Circuit).**

Dated at New Haven, Connecticut, this 8th day of September, 2016.


/s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
U.S. Magistrate Judge