UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Richard BEYER and Monica BEYER,<br>    *Plaintiffs,*<br>        *v.*<br>Anchor Insulation Co.,<br>    *Defendant.* | Civil No. 3:13-cv-1576 (JBA)<br><br><br>February 28, 2017 |

## RULING ON PLAINTIFFS' MOTION TO STRIKE EXPERT WITNESSES

In this product liability case involving claims of injury to property stemming from Defendant's installation of spray polyurethane foam ("SPF") insulation, Plaintiffs Richard and Monica Beyer ("Plaintiffs" or the "Beyers") move [Doc. # 224] to strike the testimony of Mason Knowles, Dr. James Poole, Ph.D., Dr. Philip Edelman, M.D., Dr. Robert DeMott, Ph.D., and Dr, Kenneth Rosenman, M.D. because they were untimely designated by Defendant Anchor Insulation Co. ("Defendant" or "Anchor") as its testifying witnesses after they had been timely designated by Anchor's co-defendants and deposed during the discovery period. For the reasons set forth below, Plaintiffs' motion to strike is denied.

### I. Background

A fuller description of the facts of the case, taken in the light most favorable to the Plaintiffs, has been laid out in the Court's Ruling [Doc. # 268] on Defendant's Motion for Summary Judgment, but to resolve the instant motion, a description of the timing of expert disclosure within the context of discovery and settlement negotiations is necessary. Briefly, the Beyers engaged Anchor to install SPF in their home. The SPF was manufactured by Johns Manville, Inc. and Icynene Co., both of whom were one-time Defendants who have since settled with Plaintiffs. The installation occurred in September and October, 2010, and shortly thereafter, the Beyers began

complaining of a variety of symptoms. Worried about the health effects of the SPF and displeased with the foam product, the Beyers negotiated with Anchor to have it removed. Approximately eleven months after it was installed, Anchor removed a large portion of the SPF. Some foam remains in the house today. The Beyers later filed this lawsuit.

Before the expert disclosure deadline, Anchor disclosed one testifying expert, Dr. George Thompson, who is not a subject of the instant motion. Also before the disclosure deadline, Defendants Johns Manville and Icynene jointly disclosed Dr. Poole (a board certified industrial hygienist) and Mr. Knowles (an SPF expert). Icynene alone disclosed Drs. Edelman (an expert in medical toxicology) and DeMott (a board-certified toxicologist), and Johns Manville alone disclosed Dr. Kenneth Rosenman (a medical doctor and professor of medicine). Their expert reports were timely served. (*See* Opp'n to Mot. to Preclude Testimony [Doc. # 236] at 2.)

Plaintiffs subsequently deposed all of these experts: Dr. Edelman on Aug. 5, 2016, Drs. Poole and DeMott on Aug. 12, 2016, Mr. Knowles on August 16, 2016 and Dr. Rosenman on August 22, 2016. Plaintiffs asked Dr. Edelman if he had done any work "on behalf of Anchor Insulation in this case" or "formed any opinions regarding the conduct of Anchor Insulation in this case," to which Dr. Edelman replied that he had not. Drs. Poole and DeMott confirmed in deposition that they had been retained solely by Icynene. With respect to Mr. Knowles, after reporting that there was no Anchor-installed SPF on the upper floors to inspect and that he was not permitted to take a sample of the Anchor-installed SPF in the basement, he opined in his report: "Because the Johns Manville foam had previously been removed I cannot provide an opinion on the quality of the application. And because I was not allowed to obtain samples of the SPF in the basement I am not able to provide an opinion on the quality of the Icynene foam either." (Ex. 3 ("Knowles Report") to Mot. to Preclude Testimony [Doc. # 207-4] at 16.)

In mid-September, 2016, Defendants Johns Manville and Icynene engaged in settlement discussions with Plaintiffs and on October 5, 2016 Defendants Icynene and Johns Manville filed a "Notice re: Motions to Enforce Settlement Agreements" that declared both that Plaintiffs had reached settlement in principle with Johns Manville and Icynene on September 15 and that Plaintiffs had withdrawn their consent to settle on October 4, 2015. Johns Manville and Icynene notified the Court that they both intended to file motions to enforce the settlement agreements.

That same day, well after the deadline to disclose expert testimony, Anchor gave notice to Plaintiffs "that it may call the following expert witnesses, previously disclosed by Johns Manville, Inc. . . . and Icynene Corporation, at the trial of this case." (Ex. F ("Expert Witness Disclosure") to Opp'n to Preclude Testimony [Doc. # 236-6].) On November 29, 2016 Icynene and Johns Manville were dismissed from the case upon report of settlement after renewing their motion to enforce a settlement agreement. [Docs. ## 230, 247].

## II. Legal Standard

Fed. R. Civ. P. 26(a)(2)(D) requires that a party "make [expert] disclosures at the times and in the sequences that the court orders." Fed. R. Civ. P. 37(c)(1) mandates that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial unless the failure was substantially justified or is harmless." Although the Advisory Committee Notes characterize this provision as "self-executing," they also note that "limiting the automatic sanctions to violations 'without substantial justification,' coupled with the exception for violations that are 'harmless,' is needed to avoid unduly harsh penalties in a variety of situations: e.g. . . . the failure to list as a trial witness a party so listed by another party." Fed. R. Civ. P. 37 advisory committee note to 1993 amendment.

In the broader context of determining whether to preclude an expert's testimony or report, the Court considers the following factors: (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. *See Softel, Inc. v. Dragon Med. & Sci. Commc'ns. Inc.*, 118 F.3d 955, 961 (2d Cir. 1997).

### III. Discussion

Plaintiffs assert that permitting the experts to testify would be "severely prejudicial to Plaintiffs' case" but they do not articulate any specific manner in which Plaintiffs would be prejudiced. (Mot. to Strike [Doc. # 224] at 3.) Plaintiffs claim that although they were timely served with the expert disclosures and had an opportunity to depose each of the experts, they did not have a chance "to establish bias in the context of Anchor" during deposition. (Mem. Supp. Mot. to Preclude Testimony [Doc. # 224-1] at 3.) Consequently, Plaintiffs claim they would need to re-open discovery if the experts were permitted to testify on Anchor's behalf. (*Id.* at 5.)

In their briefing, the parties focus on this Court's decision in *Anderson v. Metro-North Commuter R.R. Co.*, No. 14-cv-452 (JBA), 2016 WL 2755910 (D. Conn. May 11, 2016) and the cases cited therein, in which the Court permitted a plaintiff to designate and later call at trial Defendant's independent medical examination expert, even though Defendant had withdrawn its designation of that witness prior to trial.

Defendant draws on *Anderson* to urge a broad rule under which once an expert witness has been timely disclosed pursuant to Fed. R. Civ. P. 26(a)(2), "any party is then allowed to call that expert at trial, even if the original designation is subsequently withdrawn." Defendant fails to note that these comments occur in *dicta* in a section of the Ruling in which the Court rejected adoption

of such a broad rule. Instead, after examining competing legal standards used in different circuits, the Court concluded that the appropriate standard, adopted by several courts in the Second Circuit, is the Fed. R. Evid. 403 balancing test, which requires the court on a case-by-case basis to determine if otherwise relevant evidence should be excluded because it would, inter alia, create unfair prejudice or be unduly cumulative.

*Anderson* and the cases cited by Defendant can be distinguished from the instant case because they involve designation of the opposing party's disclosed expert as a witness at trial. Because the opposing party engaged the expert, concerns about prejudice are minimized (though perhaps not entirely absent). As one court notes, "[defendant's d]elay in alerting [the plaintiff] that Dunbar might testify was as harmless as they come, given Dunbar's status as [the plaintiff's] expert." *S.E.C. v. Koenig*, 557 F.3d 736, 744 (7th Cir. 2009). In cases like *Koenig*, it would be impossible for a party to claim surprise or ambush when its own expert appeared on a witness list.

The facts of the instant dispute are slightly different since here Anchor has belatedly cross-designated experts who initially were to testify on behalf of Anchor's co-defendants, Icynene and Johns Manville. The purpose behind Rule 26(a)(2)'s disclosure requirement is to ensure that "opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed. R. Civ. P. 26(a)(2) advisory committee note to 1993 amendment. A defendant cannot, in the usual course, evade this timing requirement by relying on co-defendants' expert disclosure because a Plaintiff may make strategic decisions about which questions to ask at deposition and how to prepare for trial in reliance on the fact that the expert has not been designated by all defendants. However, a plaintiff cannot simply claim harm solely because an expert was belatedly disclosed; it must make some showing that the belated disclosure robs it of the reasonable time to prepare for which the disclosure rule is in place.

Plaintiffs have not made out any concrete case for prejudice or loss of ability to prepare because of Anchor's belated designation of the Icynene and Johns Manville experts. Beyond two conclusory assertions that they would be prejudiced by the Court's ratification of Defendant's late designation of Icynene's and Johns Manville's experts, they do not suggest any specific way in which they were so prejudiced. They suggest that a "vast array" of topics could have been covered in deposition, but they ignore the procedural posture of the depositions they took. (Mot. to Strike [Doc. # 224] at 4.) At the time Plaintiff deposed the experts, Defendants Icynene and Johns Manville were still in the case, and Plaintiffs had to anticipate their experts' testimony at trial.[1] Furthermore, Plaintiffs timely received the experts' reports and Defendant Anchor represents that the experts' testimony at trial will be limited to what Plaintiffs already know about them: "Anchor

---

[1] Given the timing of Plaintiff's settlement negotiations with Johns Manville and Icynene, the instant case resembles more closely the facts in *Pearson v. Al-Maha Enterprises Co.*, No. 1:10-CV-2799-CAP, 2012 WL 12872906, at *3 (N.D. Ga. Dec. 11, 2012). In *Al-Maha*, a rear tire came off a moving vehicle and caused an accident. The victims filed suit against each of the five service centers that had serviced the car in the preceding two years. Two of the defendants timely disclosed a group of six expert witnesses. After the close of discovery, these two defendants settled with plaintiffs and were dismissed from the case. At that point, the remaining defendant cross-designated the experts previously disclosed. Relying on the 1993 Advisory Committee notes to Fed. R. Civ. P. 37, the district court concluded that the experts would be permitted to testify. Considering the potential prejudice to the plaintiffs, the court reasoned that:

> The only harm plaintiffs claim is that they settled with Al-Maha's co-defendants based on the assumption that Al-Maha would not be able to use the testimony of its co-defendants' experts or plaintiffs' own experts because it had not cross-identified these experts. As discussed above, however, the expert designation rules provide no reasonable basis for such an assumption. So long as the experts were timely identified by another party to the litigation, so that plaintiffs had the opportunity to depose them and obtain rebuttal experts, plaintiffs had no reason to expect that Al-Maha would be precluded from using such expert testimony.

*Id.* Similarly, here, the experts were timely disclosed, Plaintiff had time to depose them and to retain rebuttal experts.

has already stated that it does not intend to elicit any testimony beyond what was contained in the expert's reports or what was elicited from them at their depositions." (Def.'s Mem. Opp'n at 7.)

Given Plaintiffs' failure to articulate any concrete way in which they would be prejudiced and the fact that Anchor has indicated it will restrict the expert testimony to the opinions contained in the reports and elicited at deposition, and in light of the Advisory Committee's contemplation that exclusion is inappropriate in similar, though not identical circumstances, the Court finds it is appropriate to permit the testimony of Mason Knowles, Dr. James Poole, Ph.D., Dr. Philip Edelman, M.D., Dr. Robert DeMott, Ph.D., and Dr, Kenneth Rosenman, M.D.

**IV. Conclusion**

For the foregoing reasons, Plaintiffs' motion to strike expert testimony is DENIED.

IT IS SO ORDERED.

/s/

_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 28th day of February 2017.