UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Richard BEYER and Monica BEYER,<br>    *Plaintiffs*,<br>    *v.*<br>Anchor Insulation Co. Inc.,<br>    *Defendant.* | Civil No. 3: 13-cv-1576(JBA)<br><br>March 3, 2017 |

**RULING ON MOTION TO AMEND COMPLAINT**

Plaintiffs filed this product liability lawsuit originally in the Connecticut Superior Court, alleging strict liability for product defect, failure to warn, negligence, breach of contract and violation of the Connecticut Unfair Trade Practices Act ("CUTPA") in connection with the installation and removal of spray polyurethane foam ("SPF") in their home. Defendants removed to federal court on October 28, 2013. Thereafter, Plaintiffs amended their complaint twice [Docs. # 28, 44] and Defendants moved to dismiss the Second Amended Complaint, which was granted on October 28, 2014 as to the CUTPA claims as time-barred [Doc. # 46]. On February 26, 2017, after the close of discovery and the Court's decision on Defendant's motion for summary judgment, Plaintiffs moved [Doc. # 268] to amend their complaint to include characterizations of Defendant's conduct as "reckless" and correspondingly to include a prayer for punitive damages under the Connecticut Products Liability Act (the "CPLA"), Conn. Gen. Stat. § 52-240b. Jury selection is scheduled for March 7, 2017 and the trial is to commence on March 9, 2017. For the reasons set forth below, Plaintiffs' motion to amend is denied.

**I.   Background**

In the operative Second Amended Complaint, Plaintiffs alleged that Defendants had violated CUTPA by deliberately misleading Plaintiffs to believe that Anchor's installers were

qualified and that SPF was safer than other forms of insulation and included in their prayer for relief a request for punitive damages under CUPTA ("Plaintiffs' prayer for relief: . . . Punitive Damages pursuant to Connecticut General Statutes § 42-110g [CUTPA]." (Am. Compl. [Doc. # 44] at 17.)) They did not allege recklessness or deliberate disregard of risk in their negligence or breach of implied warranty allegations, and their prayer for relief did not reflect any request for punitive damages pursuant to the Connecticut Products Liability Act or in connection or in connection with any of the other claims pleaded.

## II. Legal Standard

Under Federal Rule of Civil Procedure 15(a), a court "should freely give leave [to amend] when justice so requires." However, where a party moves to amend after a court-ordered deadline to amend the pleadings, it must clear the hurdle of Rule 16. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."). Under Federal Rule of Civil Procedure 16(b)(4), "a [court-ordered] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "By limiting the time for amendments, the rule is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and pleadings will be fixed." *Parker*, 204 F.3d at 340 (internal quotation marks omitted).

In order to amend a complaint after the deadline for amendment has passed, a party must show good cause, which "depends on the diligence of the moving party." *Id*. While district courts "may consider other relevant factors, including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice [the non-moving party]," "the primary consideration is whether the moving party can demonstrate diligence." *Kassner v. 2nd Ave.*

2

*Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007); *see also Johnson v. Bryson*, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012) ("Whether 'good cause' exists turns primarily on the 'diligence' of the moving party in seeking to meet the deadline in the scheduling order.").

### III. Discussion

Plaintiffs' proposed Third Amended Complaint contains two changes material to the instant motion. First, Plaintiffs propose to add: "The harm Plaintiffs suffered was the result of Defendant's reckless disregard for the safety of consumers, Plaintiffs, whose property was damaged by the product." (Ex. 19 ("Third Amended Complaint") to Mot. to Amend [Doc. # 278-20] ¶ 32). The second amended complaint, by contrast, did not describe any of Defendant's actions as "reckless" or "wanton" or as being taken with deliberate disregard. Second, Plaintiffs propose to amend their prayer for relief to request punitive damages under the CPLA.

#### A. Request for Punitive Damages Under CUTPA Does Not Carry Over to the CPLA

At oral argument, Plaintiffs maintained that the amendment was a mere formality because the Defendants had been on notice since the beginning of the case that Plaintiffs sought punitive damages. This argument is without merit. Plaintiffs' original prayer for relief limited their request for punitive damages to punitive damages under CUTPA. This request is not a demand for punitive damages based on Defendant's conduct in general, because "a demand for punitive damages is not a freestanding claim; rather, it is parasitic and possesses no viability absent its attachment to a substantive cause of action." *Gallinari v. Kloth*, 148 F. Supp. 3d 202, 217 (D. Conn. 2015). Plaintiffs explicitly attached their request for punitive damages to the CUTPA allegations alone.

By the dismissal of Plaintiffs' CUTPA claims, the Plaintiffs' demand for punitive damages under 42 Conn. Gen. Stat. 110(g) (CUTPA) was mooted. No prayer for punitive damages

remained associated with claims of common law negligence or the CPLA violation as the CUTPA punitive damages claim does not carry over to these remaining causes of action. Thus, contrary to Plaintiffs' representation at oral argument, the original request for punitive damages did not serve to put Defendant on notice from the beginning of the case that punitive damages were being sought beyond a CUTPA claim, and thus the request to amend the complaint is not a mere formality to conform pleadings to the tacit assumptions of both parties during the course of discovery and preparation of dispositive motions.

### B. Delay

Under the good cause analysis required by *Parker*, "the primary consideration is whether the moving party can demonstrate diligence." *Kassner*, 496 F.3d at 244. Plaintiffs' brief in support of its motion to amend represents the existence of significant material uncovered during course of discovery that might constitute evidence of reckless disregard; it is therefore understandable that the original complaint, before the benefit of discovery, lacked such allegations. Indeed, some of the evidence could bear directly on what Defendant knew and when it knew it, including an email from Defendant to Johns Manville dated October 1, 2010, during its installation of SPF in Plaintiffs' home, explaining that Defendant would like to cease selling the Johns Manville SPF to be installed in Plaintiffs' home because it had failed on seven prior occasions and, "given our experience, subsequent product failures may be an issue." (Ex. 3 ("Anchor e-mail") to Mot. to Amend [Doc. # 278-4].)

Discovery closed on August 15, 2016, and at that time Plaintiffs appeared to be aware of the need for, and anticipated filing, a motion to amend the complaint to include a request for punitive damages, as reflected in the Joint Status Report the parties submitted to the Court on August 23, 2016 ("The Plaintiffs anticipate filing . . . a motion to allege punitive damages against

4

Defendants Johns Manville and Anchor.") (Joint Status Report [Doc. # 174] at 4.) Defendant represents in its opposition briefing that it inquired about this anticipated motion via e-mail but received no response from Plaintiffs' counsel. (Opp'n. [Doc. # 288] at 2; *see* Ex. B. ("8/23 E-mail") [Doc. # 288-2].)

Against this background, Plaintiffs' explanation for their delay—that the failure to request punitive damages "was an error in the pleading which was discovered on February 17, 2017" and which Plaintiffs moved to correct as soon as it was discovered (Mem. Supp. Mot. to Amend [Doc. # 278-1] at 2.)—rings hollow. Plaintiffs were aware of their need to amend as early as August, 2016.

When challenged at oral argument, Plaintiffs brought forth a second argument. Instead of arguing that they were unaware of the pleadings deficiency until February 2017, Plaintiffs represented that the parties had been aware of the lack of a request for punitive damages under the CPLA and had actively disputed whether this was a pleading deficiency. To support this position, Plaintiff's counsel read into the record a Nov. 29, 2016 e-mail. In pertinent part, she had written to opposing counsel: "Also, I reviewed the complaint again, and punitive damages are already pled. Even though you probably already know about this, out of an abundance of caution, I wanted to let you know about the punitive damages claim before your final report to the carrier."

This e-mail highlights two points: it further undermines Plaintiffs' argument that they only discovered the pleading deficiency on February 17, 2017. Second, it suggests that this email is part of a longer conversation, in which Defendant had earlier brought the pleading deficiency to Plaintiffs' counsel's attention or at least alerted her to the fact that Defendant did not read the complaint to allege punitive damages. Otherwise, Plaintiffs' counsel would not have used the word "already."

### C. Prejudice

The Court also should consider prejudice to the non-moving party in determining whether to permit leave to amend a pleading. Plaintiffs argue that Defendant suffers no prejudice because it has been on notice of the claim for punitive damages since the beginning of the case but, as discussed above, this argument fails because Plaintiffs' claim for punitive damages was attached to the CUTPA claims that did not survive dismissal in 2014.

Further, Defendant makes a strong showing of likely prejudice because permitting amendment on the eve of trial would rob it of the chance to move to dismiss any claim for wanton or reckless conduct or to move for summary judgment on such claims, and because it would have conducted discovery and developed the evidence differently had it been on notice of the need to defend such claims. At oral argument Anchor focused on the e-mail referencing seven failures of Johns Manville SPF. Defendant argued that this email may be seen in a different light when allegations of recklessness are included in the complaint because it could bear on Anchor's state of mind and indicate Anchor's notice of product failures. Defendant maintained that had it anticipated defending against allegations of recklessness, it would have sought to discover the cause of these seven failures to determine if it lay in the design of the product or in the installation and it would have sought to specify what "failure" meant. Permitting amendment at this late date, without the chance for a continuance of trial, would give unfair advantage to Plaintiff at trial by blocking Defendant from developing evidence in response to such e-mails like this.

**D.  Other Considerations**

This is not the first time that Plaintiffs have missed deadlines and submitted evidence at the last minute.  Previously, Plaintiffs attempted to provide purportedly "supplemental" expert reports after the deadline for expert disclosure. (*See e.g.* Ruling on Motion to Strike [Doc. # 293] *and* Ruling on Defendants' Motion to Strike [Doc. # 184].) In striking the belated supplement,

Magistrate Judge Margolis noted: "this is not the first time [Defendants] have had to ask the Court to spend time policing plaintiffs' compliance with its scheduling orders."

IV. Conclusion

Given Plaintiffs' awareness of the need to amend their complaint since at least August 23, 2016, Plaintiffs have not provided any excuse for their lack of diligence in seeking to amend their complaint to allege recklessness and request punitive damages. Absent good cause, and recognizing the prejudice to Defendant, the Plaintiffs' Motion for Leave to Amend is DENIED.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 3rd day of March 2017.